Filing # 75337032 E-Filed 07/23/2018 11:07:12 AM

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY FLORIDA
CIVIL DIVISION

MICHAEL ROBERT JOHNSON and )  CASE NO.:
KAREN ISOM BOTTEICHER, ) DIVISION:
)
   Plaintiffs, )
)
vs. )
)
THOR MOTOR COACH, INC., and )
R.V. WORLD, INC., OF NOKOMIS )
d.b.a. GERZENY'S R.V. WORLD, )

   Defendants.

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

The Plaintiffs, MICHAEL ROBERT JOHNSON and KAREN ISOM BOTTEICHER (Hereinafter "PLAINTIFF"), by and through BOLLIGER LAW GROUP, PLLC and the undersigned counsel, files this Complaint and sues Defendants, THOR MOTOR COACH, INC. (Hereinafter MANUFACTURER) for violations of the Magnuson Moss Warranty Act 15 U.S.C. 2301 et. al., for Breach of Express Warranty and R.V. WORLD, INC., OF NOKOMIS d.b.a. GERZENY'S R.V. WORLD (Hereinafter DEALER) for violations of the Magnuson Moss Warranty Act 15 U.S.C. 2301 et. al., for Breach of Express and Implied Warranty under the Acts for defects and fraud associated with the sale and service/repair of a 2018 Thor Citation 24SV, VIN: WDAPF4CC4H9715254 (Hereinafter "VEHICLE") warranted by MANUFACTURER and sold by DEALER.

### JURISDICTION AND PARTIES

1.    MANUFACTURER is a foreign corporation authorized to do business in the State of Florida and at all times relevant hereto, was engaged in the business of manufacturing RVs, including the instant vehicle and selling and servicing RVs through its authorized AGENTS and REPRESENTATIVES it maintains in Sarasota County, Florida.

2. DEALER is a Florida corporation authorized to do business in the State of Florida and at all times relevant hereto was engaged in the business of selling and servicing RVs including conducting the sale of the instant vehicle to PLAINTIFFS in Sarasota County, Florida.

3. These causes of action accrued in Sarasota County, Florida.

4. The amount in controversy **DOES** exceed FIFTEEN THOUSAND DOLLARS ($15,000.00) but is less than FOURTY-NINE THOUSAND FIVE HUNDRED DOLLARS ($49,500.00).

### FACTS COMMON TO ALL COUNTS

5. PLAINTIFF brings this action for monetary damages and equitable remedies because of serious and chronic defects that the VEHICLE exhibits.

6. The VEHICLE is inherently defective in materials, design or workmanship and the defects appeared immediately after the Plaintiff took delivery of the VEHICLE; MANUFACTURER and agent DEALER have been unable to correct the defects after multiple repair attempts.

7. On or about July 24, 2017, PLAINTIFF purchased the VEHICLE "new" from the MANUFACTURER'S authorized agent dealership, who is the seller (**See EXHIBIT A - Purchase Contract**).

8. Along with the purchase of the VEHICLE, PLAINTIFF received warranties including express and implied warranties from the MANUFACTURER and agent DEALERSHIP. Additionally, the PLAINTIFF was supposed to receive MANUFACTURER'S BUMPER TO BUMPER WRITTEN WARRANTY warranting that the VEHICLE would be free from defects in materials or workmanship however, PLAINTIFF did not receive a physical copy of the written warranty before, during, or even after the sale and currently is still without the benefit of a copy of the written warranty that he was promised during the course of the sale.

9. Specifically, during the course of the sale, Plaintiff inquired about MANUFACTURER'S written warranty and DEALER informed that MANUFACTURER supplied a full written warranty that covered any defects that arose in the vehicle for a full year from the time of delivery and that manufacturer would pay for the repair of any defects that arose in the vehicle during the warranty period.

**Exhibit 2**

10. Additionally, DEALER explained that Plaintiff would be free to take the vehicle to any authorized Thor dealer across the nation for repairs under the full written warranty and explained that there was an authorized Thor dealer near Plaintiffs location.

11. Neither DEALER nor MANUFACTURER made the written warranty available prior to or during the course of the sale to Plaintiff, nor was a copy of the warranty provided to Plaintiffs upon delivery of the vehicle and no copy of the warranty was affixed to or contained within the vehicle at the time of delivery.

12. MANUFACTURER relies upon DEALER to act as its agent for delivering and explaining the warranty to Plaintiff and for conducting warranty repairs on its product.

13. Specifically, MANUFACTURER has authorized DEALER and requires DEALER to provide Plaintiff with a Registration and Acknowledgment of Receipt of Warranty and Product Information Form at the time of delivery and requires DEALER to ensure that Plaintiff execute this form only after Plaintiff has inspected the vehicle and only after Plaintiff has received a physical copy of the written warranty.

14. DEALER has accepted this undertaking and acts on behalf of MANUFACTURER as its agent for delivering MANUFACTURER'S written warranty and for conducting the pre-delivery inspection and for having Plaintiffs execute MANUFACTURER'S Registration and Acknowledgment of Receipt of Warranty and Product Information Form but failed to take this steps leaving Plaintiff without a copy of the written warranty and without the benefit of being able to conduct a pre-delivery inspection.

15. Specifically, DEALER failed to make the delivery of the RV at the scheduled time promised and instead, the delivery driver arrived alone, late and at night on July 28, 2017 and then required a ride to the airport, which was far away and which caused Plaintiff to finally return home near midnight.

16. As a result, DEALER failed to inform that the vehicle was required to be inspected immediately, failed to provide the written warranty, and failed to have Plaintiffs execute the Registration and Acknowledgment of Receipt of Warranty and Product Information Form.

   A. Plaintiff later found a Thor Motor Coach Owner's Manual in the RV and the Owner's Manual references a written warranty and makes promises to stand behind the RV

**Exhibit 2**

and to repair defects found in the vehicle but the actual written warranty while being referenced is not contained within the Manual as stated.

17. When Plaintiffs inspected the vehicle the next morning they found approximately sixty-seven (67) defects in the brand-new RV that should have been discovered the previous day prior to delivery had the pre-delivery inspection taken place at that time as required.

18. Plaintiff immediately contacted DEALER to inform that the vehicle was delivered with these serious defects and DEALER admitted that RV was not ready for delivery and should not have been delivered in the condition that it was in. As a result, DEALER promised to retrieve the defective vehicle free of charge and take it to its Lakeland location, which was also an authorized Thor sales and service center to perform warranty repairs under MANUFACTURER'S written warranty and to make repairs and adjustments that it was required to make prior to delivery of the vehicle and to only re-deliver the vehicle once the pre-delivery inspection list was completed and the defects cured.

19. Thereafter, a few days later, on August 4, 2017, DEALER acting on its above promises came to Plaintiffs home to retrieve the vehicle to take it to its Lakeland location to cure the list of defects found during the pre-delivery inspection. Attached as **EXHIBIT B** is a copy of the pre-delivery inspection list created by DEALER.

20. Thereafter, sometime in the middle of October 2017, over 60 days after retrieving the defective vehicle, DEALER finally delivered the vehicle to Plaintiffs at their home.

21. Thereafter, Plaintiffs again inspected the vehicle and found that most of the defects on the list were never repaired, or incorrectly repaired and Plaintiffs also found additional defects. Plaintiffs then immediately contacted both DEALER and MANUFACTURER via phone and in writing to complain about the defective vehicle and their inability to use the vehicle since the date of purchase.

22. Both DEALER and MANUFACTURER instructed Plaintiffs to take the vehicle to the closest Thor authorized service center, which was Camping World in Gulf Breeze, Florida for repairs to be conducted under MANUFACTURER'S written warranty.

23. Plaintiffs then called Camping World, who informed that they would have to wait about a week until late October to bring the RV in for warranty repairs under MANUFACTURER'S written warranty and made an appointment for Plaintiffs at the end of the month of October 2017.

**Exhibit 2**

24. Plaintiffs then delivered the RV to Camping World who has purportedly been conducting warranty repairs under MANUFACTURER'S written warranty since late October 2017 and to date, the RV remains at Camping World awaiting the completion of repairs of some 60 plus defects most of which were identified nearly a year ago.

25. Plaintiffs have been without the ability to use their RV since the date of purchase because it has been in service for repairs under MANUFACTURER'S written warranty the entire time since Plaintiffs purchase in July of 2017.

26. DEALER & MANUFACTURER may have attempted to disclaim or limit the express and/or implied warranties.

   A. Any limitation on express warranty is unconscionable pursuant to Florida Law Specifically:

      i. If made the limitation was made in a pre-printed adhesion contract for which the term could not be negotiated;

      ii. If made the limitation and/or the disclaimer was a result of legal assistance to the MANUFACTURER and DEALER. These entities were able to purchase this legal assistance because of the relative bargaining power and advantages they maintain over the PLAINTIFF, an ordinary consumer.

      iii. Moreover, the substance of the bargain should not allow MANUFACTURER and DEALER to sell an expensive defective product and receive a large profit, while at the same time washing its hands of the product leaving absolutely no recourse for the PLAINTIFF.

      iv. If made, the disclaimer and/or limitation is a direct result of a superior bargaining position because relative sophistication and knowledge. Moreover, it is a calculated method designed to escape liability for producing and selling a defective vehicle.

   B. Pursuant to Florida Statutes, the PLAINTIFF received an implied warranty that the product would be fit for its ordinary and particular purpose.

      i. This implied warranty of merchantability was not disclaimed, or could not be disclaimed, or:

      ii. In the alternative was not properly disclaimed in that the disclaimer was not written so that a reasonable person ought to have noticed or comprehended it, specifically;

         a. it was not written in all capitals;

**Exhibit 2**

     b. it was not in a different font or color;

     c. it was not on the face of the retail installment contract and/or warranty.

  C. It was not conscionable pursuant to the Magnuson Moss Warranty Act and/or Florida Law Specifically:

     i. If made, the disclaimer was made so in a pre-printed adhesion contract for which the term could not be negotiated;

     ii. If made, the disclaimer was a result of legal assistance to the MANUFACTURER and DEALER. These entities were able to purchase this legal assistance because of their relative advantages they maintain over the Plaintiff.

     iii. Moreover, the substance of the bargain is such that MANUFACTURER and DEALER should not be permitted to sell an expensive defective product and to receive a large profit, while at the same time washing their hands of the product leaving absolutely no recourse for the PLAINTIFF.

     iv. If made, the disclaimer and/or limitation is a direct result of a superior bargaining position because of relative sophistication and knowledge. Moreover, it is a calculated method designed to escape liability for producing and selling a defective vehicle or product.

  D. Any attempt to disclaim the Implied Warranty by DEALER and MANUFACTURER is ineffective pursuant to the Magnuson-Moss Warranty Act because both DEALER and MANUFACTURER supplied express and/or written warranties.

  27. PLAINTIFF has repeatedly given notice of these defects and notice of the breach of warranty to both MANUFACTURER and DEALER both verbally and in writing. Additionally, PLAINTIFF followed MANUFACTURER'S specific instructions by taking the vehicle to MANUFACTURERS authorized repair agents as directed by MANUFACTURER for the performance of warranty repairs. DEALER/agents perform warranty repairs on MANUFACTURERS behalf, interact with PLAINTIFF on MANUFACTURERS behalf, and are paid by MANUFACTURER for conducting the repairs under its written warranty.

  28. Additionally, Plaintiff also notified MANUFACTURER and DEALER in writing of the breach of warranty and chronically defective condition of the RV and demanded a repurchase/revoked acceptance, which was ignored or refused.

**Exhibit 2**

29. The warranty "repairs" made to the PLAINTIFF'S vehicle are substandard, inadequate and have never corrected the defects. Additionally, MANUFACTURER and DEALER have refused to complete warranty repairs rendering their warranties useless.

30. Due to the serious defects with the VEHICLE, the PLAINTIFFS faith in the VEHICLE has been shaken and irreparably harmed and the vehicle's value has been affected.

31. In the alternative, the express warranties provided to the PLAINTIFF have failed their essential purpose due to the MANUFACTURER'S and DEALER'S failure to adequately investigate and repair the defects within a reasonable time and/or number of attempts. Further, the above failure to conform the product to the written and implied warranties and subsequent unwillingness or inability conform the RV's defects in a timely manner is tantamount to a refusal to honor the written and implied warranties.

32. All conditions precedent have been met or have been waived.

### FACTS ALLEGING ACTUAL AGENCY RELATIONSHIP BETWEEN DEFENDANTS MANUFACTURER AND DEALER

33. Upon information and belief and pursuant to the **Sales and Service/Franchise Agreement, outlining the relationship between MANUFACTURER and its agent, DEALER, and controls the manner in which agent DEALER operates.** The principle, **MANUFACTURER has acknowledged that DEALER will act for it, further, the agent DEALER, has accepted the undertaking by agreeing to the contractual agreements: Specifically, the MANUFACTURER exercises day to day control over DEALER and its operations. Dealer sells MANUFACTURER'S vehicles on its behalf interacting with the Plaintiff on MANUFACTURER'S behalf. DEALER/AGENT also performs warranty repairs on MANUFACTURER's behalf, interacting with the Plaintiff and making repairs and statements regarding the repairs for MANUFACTURER. Without the AGENT/DEALER MANUFACTURER would cease to exist. Also MANUFACTURER exerts control over ANENT/DEALER by the following:**

A. Having almost daily contact with its dealerships to monitor that DEALER follows detailed procedures for the daily operation and management of dealership premises, dealership inventory, and dealership sales and service.

**Exhibit 2**

  B. Monitors monthly satisfaction surveys and requires corrective action if those surveys indicate that the retail consumer is not happy with the performance of the dealership. Including, but not limited to:

    i. Involving itself in the hiring, firing and training by requiring that dealership employees be monitored retrained or disciplined for poor performance.

  C. Is directly involved with the sales of the vehicle including affecting the price of the vehicle to retail consumers by offering rebates to both the dealership and consumer, offering special financing rates and specials. Without this principle agent relationship MANUFACTURER would cease to exist.

  D. Directly, involved in hiring and firing of dealership employees in that it requires that a certain type of employee be hired by the dealership and mandates certain types of training conducted by MANUFACTURER. Moreover, the MANUFACTURER has the ability to require the firing, retraining, and/or disciplinary action against dealership employees who are nonperforming.

  34. MANUFACTURER retains the ability to control its dealerships because MANUFACTURER'S profitability and very existence is reliant upon the DEALER/AGENT selling MANUFACTURER'S vehicles and related products according to its strict procedures. MANUFACTURER has no other way to sell or service its vehicles without the agent DEALER.

**COUNT I
VIOLATION OF MAGNUSON MOSS
WARRANTY ACT EXPRESS WARRANTY
(MANUFACTURER)**

  35. PLAINTIFF hereby sues MANUFACTURER for breach of express warranty.

  36. PLAINTIFF incorporates paragraphs 1-32 as though fully restated and re-alleged.

  37. PLAINTIFF is a "consumer" as defined in the ACT 15 U.S.C. 2301(3). In that he/she/they purchased a consumer product.

  38. The MANUFACTURER is a "supplier" and "warrantor" as defined by the ACT, 15 U.S.C. 2301(4) and (5).

  39. The vehicle is "consumer product" as defined in the ACT, 15 U.S.C. 2301(1) because it is tangible personal property distributed in commerce normally used for personal, household or family use.

**Exhibit 2**

40. The vehicle was manufactured, sold and purchased after July 4, 1975.

41. The express warranty given by the MANUFACTURER pertaining to the vehicle and under which MANUFACTURER has been conducting repairs is a "written warranty" as defined in the Warranty Act, 15 U.S.C. 2301(6).

42. The above-described actions of selling and marketing a vehicle with defects in materials and workmanship constitute a breach of the written warranty which warranted against defects in materials and workmanship.

A. In the alternative, the above-described actions of selling and marketing a vehicle with defects in materials and workmanship and failing to adequately repair defects within a reasonable time constitute the warranty failing of its essential purpose under the ACT, 15 U.S.C. 2310(d)(1) and (2).

B. MANUFACTURER'S refusal to complete warranty repairs is a breach of the written and or express warranties.

43. In the alternative, MANUFACTURER'S promises to perform repairs of defects in the RV and MANUFACTURER'S subsequent attempts to conform the RV to these promises are considered express warranties arising under the Florida UCC, which are covered under the MMWA and which have been breached by MANUFACTURER.

WHEREFORE, PLAINTIFF prays for judgment against MANUFACTURER for:

A. Monetary damages, including but not limited to any compensatory, incidental or consequential damages commensurate with proof at trial for the acts complained of herein;

B. For an award of attorney fees pursuant to 15 USC 2310;

C. All other relief the Court deems just and appropriate.

## COUNT II
## VIOLATION OF MAGNUSON MOSS
## WARRANTY ACT EXPRESS WARRANTY
## (DEALER)

44. PLAINTIFF hereby sues DEALER for breach of express warranty under the Magnuson-Moss Warranty Act.

45. PLAINTIFF incorporates paragraphs 1-32 (containing detailed factual allegations) as though fully restated and re-alleged.

**Exhibit 2**

46. PLAINTIFF is a "consumer" as defined in the ACT 15 U.S.C. 2301(3). In that he/she/they purchased a consumer product.

47. DEALER is a "supplier" and "warrantor" as defined by the ACT, 15 U.S.C. 2301(4) and (5).

48. The vehicle is "consumer product" as defined in the ACT, 15 U.S.C. 2301(1) because it is tangible personal property distributed in commerce normally used for personal, household or family use.

49. The vehicle was manufactured, sold and purchased after July 4, 1975.

50. The express warranties supplied by the DEALER where DEALER made promises representing that it would cure the list of defects contained in the Pre Delivery Inspection List (PDI) coupled by DEALER'S undoing of the delivery of the vehicle and DEALER'S retrieval of the vehicle to take it to its Lakeland location to cure the list of defects and promises to only deliver the vehicle after the PDI repairs were completed constitute.

  A. "Written warranty" as defined in the Warranty Act, 15 U.S.C. 2301(6).

  B. An express warranty arising under "state law" UCC and therefore covered by the Act.

51. The above-described actions of failing to honor the express warranties made are a breach of those warranties and caused Plaintiff damages.

52. In the alternative, the above-described actions of failing to adequately repair the defects within a reasonable time constitute the warranty failing of its essential purpose under the ACT, 15 U.S.C. 2310(d)(1) and (2).

WHEREFORE, PLAINTIFF prays for judgment against DEALER for:

A. Monetary damages, including but not limited to any compensatory, incidental or consequential damages commensurate with proof at trial for the acts complained of herein;

B. For an award of attorney fees pursuant to 15 USC 2310;

C. All other relief the Court deems just and appropriate.

## COUNT III
## VIOLATION OF MAGNUSON MOSS
## WARRANTY ACT IMPLIED WARRANTY
## (MANUFACTURER)

53. PLAINTIFF hereby sues MANUFACTURER for breach of implied warranty.

**Exhibit 2**

54. PLAINTIFF incorporates paragraphs 1-34 as though herein fully restated and re-alleged.

    A. Privity is established through an agency relationship between MANUFACTURER and its agent/DEALER, the selling and servicing dealership (see paragraphs 33-34).

55. PLAINTIFF is a "consumer" as defined in the ACT 15 U.S.C. 2301(3). In that he purchased a consumer product.

56. The MANUFACTURER and its agent Dealer are "suppliers" and "warrantors" as defined by the ACT, 15 U.S.C. 2301(4) and (5).

57. The VEHICLE is a "consumer products" as defined in the ACT, 15 U.S.C. 2301(1) because it is tangible personal property distributed in commerce normally used for personal, household, or family use.

58. The VEHICLE was manufactured, sold, and purchased after July 4, 1975.

59. The above-described defects render the VEHICLE unfit for its ordinary purpose of safe and reliable transportation and temporary lodging for travel and camping under the ACT, 15 U.S.C. 2310(d)(1) and (2).

60. The defects were present at the time the VEHICLE left the MANUFACTURER'S possession.

61. The MANUFACTURER and agent Dealer were on notice of the defects contained in the VEHICLE, but have chosen to ignore the defects and failed to properly/adequately repair them.

62. Any attempt by MANUFACTURER to disclaim or avoid the implied warranty, even if made properly, is ineffective because it supplied an express and/or written warranty and therefore under the MMWA may not disclaim the implied warranty.

WHEREFORE, PLAINTIFF prays for judgment against MANUFACTURER for:

A. Monetary damages, including but not limited to any compensatory, incidental or consequential damages commensurate with proof at trial for the acts complained of herein;

B. For an award of attorney fees pursuant to 15 USC 2310;

C. All other relief the Court deems just and appropriate.

**Exhibit 2**

**COUNT IV**
**VIOLATION OF MAGNUSON MOSS**
**WARRANTY ACT IMPLIED WARRANTY**
**(DEALER)**

62. PLAINTIFF hereby sues DEALER for breach of implied warranty.

63. PLAINTIFF incorporates paragraphs 1-32 as though herein fully restated and re-alleged.

64. PLAINTIFF is a "consumer" as defined in the ACT 15 U.S.C. 2301(3). In that he/she/they purchased a consumer product.

65. DEALER is a "supplier" and "warrantor" as defined by the ACT, 15 U.S.C. 2301(4) and (5) and/or pursuant to state law, which is encompassed by the Act.

66. The vehicle is a "consumer products" as defined in the ACT, 15 U.S.C. 2301(1) because it is tangible personal property distributed in commerce normally used for personal, household or family use.

67. The vehicle was manufactured, sold and purchased after July 4, 1975.

68. The above-described Defect(s) renders the vehicle unfit for its ordinary and particular purposes of safe and reliable transportation and lodging or mobile living/camping facility under the ACT, 15 U.S.C. 2310(d)(1) and (2).

69. The Defect(s) were present at the time the vehicle left DEALER'S possession.

70. DEALER was on notice of the Defect(s) contained in the vehicle but has chosen to ignore the defect(s) and failed to properly/adequately repair them as previously plead.

71. Any attempt by DEALER to disclaim the implied warranty, even if made properly, is ineffective because it supplied an express and/or written warranty and therefore under the MMWA may not disclaim the implied warranty.

WHEREFORE, PLAINTIFF prays for judgment against DEALER for:

A. Monetary damages, including but not limited to any compensatory, incidental or consequential damages commensurate with proof at trial for the acts complained of herein;

B. For an award of attorney fees pursuant to 15 USC 2310;

C. All other relief the Court deems just and appropriate.

**Exhibit 2**

### COUNT V
### VIOLATION OF THE FLORIDA
### DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (DEALER)

72.     PLAINTIFF hereby sues DEALER for violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. 501.975 et. seq.

73.     Plaintiffs hereby reallege paragraphs 1-32 which contain detailed factual allegations as if fully recited, set forth, and incorporated by reference herein.

74.     PLAINTIFF is a "Customer" or as defined in the Act.

75.     DEALER is a "Dealer" as defined in the Act because it deals in RV's which are considered motor vehicles under the Act.

76.     The VEHICLE or RV fits the definition of "vehicle" under the Act.

77.     DEALER, at all times material to this matter was a recreational vehicle dealership and was engaged in trade or commerce within the meaning of and subject to the provisions of Florida Statute 501.975 et. seq., the Florida Deceptive and Unfair Trade Practices Act (hereafter "FDUTPA" or "the Act");

### VIOLATIONS OF SECTION 501.976

78.     The Act prohibits deceptive and unfair trade practices, generally, and specifically prohibits motor vehicle dealerships from engaging in a number of specific acts set forth in 501.976, stating that it is a per se deceptive, unfair, and unlawful for a dealer to:

    A.     (6)     Sell a vehicle without fully and conspicuously disclosing in writing at or before the consummation of sale any warranty or guarantee terms, obligations, or conditions that the dealer or manufacturer has given to the buyer. If the warranty obligations are to be shared by the dealer and the buyer, the method of determining the percentage of repair costs to be assumed by each party must be disclosed. If the dealer intends to disclaim or limit any expressed or implied warranty, the disclaimer must be in writing in a conspicuous manner and in lay terms in accordance with chapter 672 and the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act..

    B.     (7)     Provide an express or implied warranty and fail to honor such warranty unless properly disclaimed pursuant to subsection (6).

**Exhibit 2**

      C.    (9) Obtain signatures from a customer on contracts that are not fully completed at the time the customer signs or which do not reflect accurately the negotiations and agreement between the customer and the dealer.

79. Defendant DEALER engaged in deceptive and unfair trade practices, generally, and, specifically violated the above-mentioned provisions of the Act, in that:

      A.    As previously plead, DEALER failed to provide a copy of the written warranty as required during the course of the sale and even afterwards, as a result, the terms of the written manufacturer's warranty were unknown to Plaintiff.

      B.    DEALER supplied express and implied warranties which it failed to honor.

      C.    DEALER forged Plaintiffs signature onto an incomplete document (the Registration and Receipt of Warranty Form). Even if the signature were not forged the Form does not accurately reflect the agreement between Dealer and customer/Plaintiff, because it states that the vehicle was inspected by Plaintiff prior to execution of the Form and that the Manufacturer's written warranty was provided to Plaintiff prior to execution of the Form. These two conditions stated in the Form did not take place.

80. As a direct and proximate result of the wrongdoing of DEALER described in this Count, Plaintiffs Barbara Haggerty and Kelly Haggerty have suffered damages, including but not limited to the difference between the purchase price paid by the Plaintiffs for the Vehicle, including payments for taxes, title, registration, license, and pre-delivery fees, as compared to the retail fair market value of the Vehicle in its actual condition and quality; loss of benefit of the bargain; diminishment in value of the vehicle; out of pocket costs; costs of repair; and the amount of title, registration, tax, and other licensing fees on an amount that was higher than it should have been;

1. Pursuant to section 501.2105 of the Act, Plaintiffs hereby state that due to the wrongdoing of DEALER Plaintiffs have had to hire counsel to pursue this matter, counsel is entitled to be paid a reasonable amount for counsel's services, and that Plaintiffs are entitled to attorney's fees and costs and hereby plead the same.

**Exhibit 2**

**WHEREFORE**, Plaintiffs, Barbara Haggerty and Kelly Haggerty, hereby state that DEALER/Carrollwood Auto Repair & Sales, Inc. has violated the Florida Deceptive and Unfair Trade Practices Act and that damages have befallen the Plaintiffs as a result, Plaintiff prays for judgment against DEALER, including:

A. For the difference in the value of the VEHICLE as promised and as actually delivered;

B. For incidental, consequential and actual damages;

C. For costs, interest and actual attorneys' fees pursuant to F.S. 501.2105 & 501.976.

## JURY DEMAND

57. PLAINTIFF hereby demands trial by jury on Counts so triable.

/s/ Aldo Bolliger
ALDO BOLLIGER
FL Bar No.: 0486973
BOLLIGER LAW GROUP, PLLC
106 S. Armenia Ave.
Tampa, FL 33609
(813) 425-2824 Phone
(813) 425-2832 Fax
aldo@mblawgroup.com

**Exhibit 2**